## THE RICHMOND.[1]

### HASKINS v. THE RICHMOND and another.

### THE MARTIN KALBFLEISCH.

(*District Court, E. D. New York.* May 26, 1885.)

COLLISION—STEAMER, AND SCHOONER IN TOW—SUDDEN SHEER—LIABILITY.

The steam-boat Richmond, having collided with a schooner in tow of the tug Kalbfleisch, and suit being brought in consequence by the schooner against both the steamer and the tug, *held*, that the weight of evidence indicated that the Richmond caused the collision by suddenly sheering in an attempt to go to the starboard of the tug, after having signified her intention to go to port; that libelant should therefore recover of the steamer, and the libel against the tug should be dismissed.

In Admiralty.

*H. D. Hotchkiss*, for libelants, William C. Haskins and others.

*Owen & Gray*, for the Richmond.

*E. G. Davis*, for the Kalbfleisch.

BENEDICT, J. I have been unable to discover any way to reconcile the testimony of the persons on board the respective vessels involved in the collision that gave rise to this action. I therefore base my decision upon the testimony of Harvey W. Temple, the pilot of the steam-boat Connecticut, who was in a position to see and hear all that occurred, whose attention was called to the vessels before they came in contact, and who has no interest in the controversy. According to the testimony of this capable pilot the Richmond, being to east of the tug, after replying to a signal of two whistles from the tug with a signal of two whistles, suddenly sheered to west, and by that means suddenly brought herself in contact with the schooner, which the tug had in tow upon her starboard side. Taking this statement as furnishing the true account of the accident, there can be no doubt that the Richmond alone must be held liable for the damage done the schooner. I incline to the opinion that the explanation of this sudden sheer of the Richmond to west is that she did not see the tug at first, but did see the Connecticut, and was intending to pass down to east of the Connecticut, when she suddenly made the tug, and at once ported in the effort to get to west of the tug, but when it was too late. There is much testimony not in harmony with this theory; nevertheless, to my mind, it appears highly probable that this is the true explanation of the occurrence.

Much stress has been laid by the advocate of the Richmond upon testimony from the schooner tending to show that the tug began to swing to west before the Richmond did; but, if that fact be con-

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

sidered proven, it does not follow that the collision was caused by that action on the part of the tug, for the tug was, from the outset up to the collision, to west of the Richmond. A swing of the tug to west would be away from the Richmond, but the Richmond's swing to west was towards the tug, and, taken as it was, it necessarily brought the vessels in contact.

The contention in behalf of the Richmond that the Richmond and tug were upon crossing courses, involving risk of collision, and that it was the duty of the tug to avoid the Richmond because she had the Richmond on her starboard side, is based upon what seems to me to be a misapprehension of the facts. The tug and steamer were not upon courses crossing, so as to invite risk of collision, but the tug was upon a course up the river, and to port of the steamer, while the latter was swinging down the river in the *endeavor* to gain a course that would carry her down the river to east of the vessels below. Having determined to pass down to east, and, as there is strong testimony to show, given notice of that intention by her whistles, it was a fault for her thereafter to endeavor to gain the west side of the tug.

The libelant must recover his damages of the Richmond, and his libel, as against the tug, must be dismissed.